UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HOME CARE PROVIDERS, INC., NIGHTINGALE HOME HEALTHCARE, INC., NIGHTINGALE HOSPICE CARE, INC., and DEV A. BRAR, <br><br> Plaintiffs, <br><br> vs. <br><br> KELLY HEMMELGARN, RANDALL SNYDER, JEROME M. ADAMS Commissioner of the Indiana State Department of Health, SYLVIA MATHEWS BURWELL Secretary of the United States Department of Health and Human Services, and INGRID MILLER, <br><br> Defendants. | No. 1:16-cv-00303-LJM-TAB |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

Defendant Sylvia Mathews Burwell, Secretary of the United States Department of Health and Human Services (the "Secretary") has moved to dismiss the claims brought against it by Plaintiffs Home Care Providers, Inc., Nightingale Home Healthcare, Inc., Nightingale Hospice Care, Inc. (these three Defendants, collectively, "Nightingale") and Dev A. Brar ("Brar") (all plaintiffs, collectively, "Plaintiffs"). Dkt. No. 13. The Secretary argues that the Court lacks jurisdiction over Plaintiffs' claims for multiple reasons. Dkt. Nos. 14 & 33. Plaintiffs argue, among other reasons, that the Court has jurisdiction over their claim for injunctive relief pursuant to *Ex Parte Young*, 209 U.S. 123 (1908), and its progeny. Dkt. No. 26.

Further, Defendants Kelly Hemmelgarn ("Hemmelgarn"), Randall Snyder

("Snyder"), Jerome M. Adams ("Adams"), Commissioner of the Indiana State Department of Health ("ISDH"), and Ingrid Miller ("Miller") (these defendants, collectively, "State Defendants") have also moved to dismiss Plaintiffs' Complaint on similar grounds, namely that Plaintiffs lack standing and/or the Court lacks jurisdiction. Dkt. No. 29 & 30. Plaintiffs contend that the cases the State Defendants rely upon apply only to federal employees, officer and agencies, not state actors and that they have been directly harmed by the actions of the Defendants. Dkt. No. 38.

For the reasons stated herein, the Court **GRANTS** the Secretary's and the State Defendants' Motions to Dismiss.

## I. FACTUAL ALLEGATIONS & STATUTORY SCHEME

The Medicare Act, 42 U.S.C. § 1395 *et seq.*, established a national program of health coverage for the aged and disabled. Among other services, Medicare provides coverage for a certain defined "home health services," including "part-time or intermittent nursing care," which are furnished on a "visiting basis" by a home health agency to a Medicare beneficiary in his or her home. 42 U.S.C. § 1395x(m) (home health services). *See also* 42 U.S.C. §§ 1395x(o) (home health agency) & 1395bbb; 42 C.F.R. Part 484 (conditions for participation for home health agency). Among other responsibilities, the Secretary oversees the Centers for Medicare & Medicaid Services ("CMS"), which operates and administers the Medicare program.

Congress has authorized CMS to enter into agreements with state survey agencies, such as the ISDH, to conduct periodic surveys of home health agencies to determine compliance with the Medicare participation requirements. 42 U.S.C. § 1395aa(a). *See also* 42 C.F.R. §§ 488.10, 488.11, 488.20. CMS bases its determination

regarding continued participation in the Medicare program on the results of those surveys; CMS is legally entitled to rely on those surveys to ensure that providers meet certain standards. 42 C.F.R. §§ 488.11, 488.12. The Secretary, through CMS, has entered into an agreement with ISDH that designates ISDH as the state survey agency responsible for the performance of the certification functions created by the Act. Ind. Code § 16-28-12-1. *See also Advantage Home Health Care, Inc. v. Ind. State Dep't of Health*, 829 N.E.2d 499, 501 (Ind. 2005); *Woodruff v. Wilson*, 484 F. Supp. 2d 876, 880 (S.D. Ind. 2007). ISDH also ensures that providers comply with Indiana State regulations and conduct surveys on Indiana's behalf as well. *See Advantage Home Health Care*, 829 N.E.2d at 501 (explaining the process of ISDH's inspection and the two reports that are generated therefrom); *see also* Ind. Code § 16-27 *et seq.*

A home health agency may also voluntarily choose to participate in a CMS-approved accreditation program by a private accreditation organization. If the home health agency passes the organization's periodic accreditation surveys, then the Secretary may "deem" the home health agency to meet Medicare's conditions of participation, as opposed to being certified through a State or CMS survey. 42 U.S.C. § 1395bb; 42 C.F.R. § 488.6. However, the Secretary's relationship with a private organization is not the same as its relationship with a State survey agency. A state agency may still conduct "validation surveys" to validate the integrity of the private accreditation process, and complaint surveys. 42 U.S.C. § 1395aa(c); 42 C.F.R. § 488.7. If a state survey finds noncompliance with a condition of participation, the home health agency is placed under the survey jurisdiction of the state agency until it returns to substantial compliance or is terminated. 42 C.F.R. § 488.8(d) – (e).

If a health care provider is failing to meet Medicare requirements, then the Secretary, through CMS may terminate the providers' participation in the Medicare program. 42 U.S.C. § 1395cc(b)(2). *See also* 42 C.F.R. § 489.53(a). Providers may then appeal CMS's determination through the administrative appeal procedure set forth in 42 C.F.R. Part 498. *See* 42 C.F.R. § 498.3(b)(8). Under this administrative scheme, the provider may seek review before an Administrative Law Judge, 42 C.F.R. § 498.40 *et seq.*, and then, if unsuccessful, the provider may appeal to the Departmental Appeals Board, 42 C.F.R. § 498.80 *et seq.* The Departmental Appeals Board decision constitutes the Secretary's "final decision." 42 C.F.R. § 498.90.

A dissatisfied provider is entitled to "judicial review of the Secretary's final decision after such hearing as is provided in section 405(g)." 42 U.S.C. § 1395cc(h)(1); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Secretary made after a hearing to which [it] was a party . . . may obtain a review of such decision by a civil action commenced within 60 days after the mailing to [it] of notice of such decision.").

As noted above, ISDH also issues a state survey report. Based on those findings, ISDH has the authority to, among other penalties, revoke a provider's license or impose civil money penalties. Ind. Code. § 16-27-1-12 (for a home health agency); Ind. Code § 16-25-5-3 (for a hospice). If ISDH revokes a provider's license or imposes one of the other penalties under Indiana Code § 16-27-1-12 or Indiana Code § 16-25-5-3, the action is reviewable under Indiana's Administrative Orders and Procedures Act ("IAOPA"), Indiana Code § 4-21.5 *et seq. See* Ind. Code § 16-25-5-6.

Nightingale is a "home health agency" that has been in operation for twenty years. Compl. ¶¶ 7, 9, 26. As a "home health agency," Nightingale is classified as a "provider"

of services under the Medicare program and has participated in the Medicare program. *See*, *generally*, Compl.; 42 U.S.C. § 1395x(u); 42 C.F.R. § 498.2.  Nightingale is owned by Brar.  Compl. ¶¶ 5,6.

In the Fall of 2015, surveyors from the ISDH conducted complaint surveys at a Nightingale facility and made findings regarding patient health and safety.  Compl. ¶¶ 48-50.  *See also* 42 C.F.R. § 484.10 *et seq.*  Based on these findings, CMS notified Nightingale that it was terminating Nightingale's participation in the Medicare program.  Compl. ¶¶ 54, 56.  Nightingale has initiated an administrative appeal of that determination under 42 C.F.R. Part 498, which is pending.  Compl. ¶¶ 55-56.

One of the Nightingale entities has also filed for bankruptcy and is challenging the Medicare reimbursement termination through an adversary bankruptcy action ("Bankruptcy Action").  *See In re Nightingale Home Healthcare, Inc.*, Case No. 1-15-10099-JMC-11 (Bankr. S.D. Ind.); *Nightingale Home Healthcare, Inc. v. Burwell*, Case No. 1-15-50340-JMC-11 (Bankr. S.D. Ind.).  In the Bankruptcy Action, Nightingale sought "a temporary restraining order or preliminary injunction and final injunctive relief enjoining the Defendants from terminating Nightingale's participation in the Medicare and Medicaid programs until its challenges to the Defendants' actions have been heard and decided by an administrative law judge . . . ."  *In re Nightingale Home Healthcare, Inc.*, Case No. 1-15-10099-JMc-11, Dkt. No. 1, Compl. ¶ 62.  The Bankruptcy Court issued a preliminary injunction pending an administrative appeal of Nightingale's termination.  *See Nightingale Home Healthcare, Inc. v. Burwell*, Case No. 1-15-50340-JMC-11; *United States v. Nightingale Home Healthcare, Inc.*, Case No. 1:16-cv-00317-LJM-TAB, Dkt. No. 5.

Plaintiffs have sued the Secretary in her "official capacity" for injunctive,

prospective relief. Compl. ¶ 14. Plaintiffs claim that the Secretary violated the Due Process Clause of the Fifth Amendment, the Equal Protection component of the Due Process Clause of the Fifth Amendment, and the First Amendment of the United States Constitution "[b]y ratifying the other Defendants' actions . . . ." Compl., Counts I – V. Plaintiffs asks the Court to enjoin CMS "from using the Indiana State Department of Health to conduct further surveys," and make it mandatory for the Secretary to use the services of other surveyors "independent from the Indiana State Department of Health and CMS." Compl. at 18, ¶¶ 1(b) & 1(c).

Plaintiffs allege that Defendants Hemmelgarn and Snyder abused the survey process in that they have harassed, discriminated against, intimidated and retaliated against Brar on the basis of race, Plaintiffs' exercise of First Amendment rights and personal dislike of Brar and/or his companies. Compl. ¶¶ 30-53. Plaintiffs assert the State Defendants "under color of State law, subjected and continue to subject Dr. Brar [and Nightingale] to a deprivation of rights secured by the Constitution and laws of the United States," Compl. ¶ 61, and that Plaintiffs have suffered and continue to suffer grievous and irreparable harm as a result of such conduct. Compl. ¶ 63. Plaintiffs assert that the State Defendants have violated the Due Process Clause of the Fifth Amendment, the Equal Protection component of the Due Process Clause of the Fifth Amendment, and the First Amendment of the United States Constitution "[b]y ratifying the other Defendants' actions . . . ." Compl., Counts I – V. Plaintiffs seek an injunction to prevent the State Defendants from conducting further surveys, or that the State Defendants may conduct a survey only "in case of a bona fide, third-party complaint alleging facts likely to constitute an immediate threat to the health and well-being of patients." Compl. at 18, ¶ 1a. Plaintiffs

also seek an order directing the State Defendants to withdraw survey reports they have submitted to CMS since January 1, 2015.  Compl. at 18, ¶ 1(d).  The Complaint also requests money damages from all Defendants as well as an award of costs and attorneys' fees pursuant to 42 U.S.C. § 1988.  Compl. at 18-19, ¶¶ 2 & 3.

## II. **STANDARDS**

Under either Rule 12(b)(1) or 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(1) or 12(b)(6)"), the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of Plaintiffs.  *See Esekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).  Documents central to the Complaint and referred to in it as well as information that is properly the subject of judicial notice may also be considered.  *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (further citation omitted)).  Further, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."  *Esekiel*, 66 F.3d at 897 (quoting *Capitol Leasing Co. v. Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993) (per curium) (further citations omitted)).

Under the Supreme Court's directive in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to survive Defendants' motions to dismiss for failure to state a claim upon which relief may be granted, Plaintiffs must provide the grounds for their entitlement to relief with more than labels, conclusions or a formulaic recitation of the elements of a cause of action.  *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The "allegations must be enough to raise a right to relief above the speculative level."  *Id.*

The touchstone is whether the Complaint gives the Defendants "fair notice of what the … claim is and the grounds upon which it rests." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Legal conclusions or conclusory allegations are insufficient to state a claim for relief. *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).

### III. **DISCUSSION**

As against the Secretary, Plaintiffs contend that they are seeking only prospective relief for ongoing constitutional violations; therefore, the Court has jurisdiction to entertain their claims. Dkt. No. 26 at 1-2. Specifically, the sovereign immunity defense does not apply to suits for injunctive relief against the Secretary. *Id.* at 2-5 (citing, *inter alia*, *Vance v. Rumsfeld*, 701 F.3d 193, 202 (7th Cir. 2012); *Rose Acre Farms, Inc. v. Madigan*, 956 F.2d 670, 673 (7th Cir. 1992); *Gautreaux v. Romney*, 448 F.2d 731 (7th Cir. 1971); *Ex Parte Young*, 209 U.S. 123 (1908)). Further, there is no "personal participation" requirement in an official capacity claim. *Id.* at 5-7 (citing, *inter alia*, *United States v. Windsor*, 133 S. Ct. 2675 (2013); *Califano v. Westcott*, 443 U.S. 76 (1979); *Bolling v. Sharpe*, 347 U.S. 497 (1954); *Thomas v. Watts*, No. 2:11-cv-00187-JMS-WGH, 2013 WL 3043686 (S.D. In. June 17, 2013)). Finally, Plaintiffs state that their claim against the Secretary is not governed by 42 U.S.C. § 405, because it seeks to enjoin ongoing misconduct by the State Defendants, which they claim the Secretary has the power to stop. *Id.* at 7-10. In fact, Plaintiffs continue, their challenge is "entirely collateral to its substantive claim of entitlement to participate in the Medicare program," and the Court has jurisdiction. *Id.* at 8 (quoting *GOS Operator, LLC v. Sebelius*, 843 F. Supp. 2d 1218, 1229 (S.D. Ala. 2012); citing *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)). It is clear, Plaintiffs argue, that they do not seek to recover Medicare reimbursement; therefore, their

standing does not turn on provisions of the Medicare Act.  *Id.* at 10-11.

As against the State Defendants, Plaintiffs state that they allege unconstitutional targeting and harassment on the basis of Brar's race or national origin, unlawful targeting and harassment based on personal dislike or other irrational reasons, retaliation for seeking redress of grievances, denial of due process and illegal search of Plaintiffs' business premises.  Dkt. No. 38 at 2 (citing Counts I-V of the Complaint).  Further, Plaintiffs similarly argue that the relief they seek is to have independent, rather than ISDH surveyors, perform any future surveys except in cases of a bona fide third party complaint alleging an immediate threat to the health and well-being of patients, for an order that the State Defendants withdraw survey reports submitted to CMS since January 1, 201<u>6</u> emphasis added), and for money damages for unconstitutional targeting and harassment based on race or national origin and other impermissible reasons.  Dkt. No. 38 at 2-3.  Plaintiffs claim that they seek only prospective relief and are not challenging the Secretary's decision, or the underlying reports supporting the decision, to terminate Nightingale's Medicare status.  *Id.* at 3.

The Secretary argues that, notwithstanding Plaintiffs' attempts to characterize their claims for relief otherwise, any equitable decision by this Court to change the process for reviewing Plaintiffs' eligibility to participate in Medicare is inextricably intertwined with standards and rights created by and under the Medicare Act; therefore, Plaintiffs' exclusive remedy is under the Act through the appeals process.  Dkt. No. 33 at 4-7 (citing, *inter alia*, *Heckler v. Ringer*, 466 U.S. 602 (1984); *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 284 (5th Cir. 1999); *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 488-89 (7th Cir. 1990)).  Moreover, the Secretary asserts

that there is no basis through which it would be proper for the Court to circumvent § 405(g) under *Ex Parte Young*. *Id.* at 2-4, 8-13 (citing, *inter alia*, *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 10 (2000); *Weinberger v. Salfi*, 422 U.S. 749, 760-61 (1975)).

The State Defendants' argument is similar. First, the State Defendants argue that Plaintiff lack standing because they have failed to allege any injury and to the extent that they have alleged an injury, they must first exhaust their administrative remedies pursuant to Indiana Code § 4-21.5 *et seq.* Dkt. No. 30 at 9-10, 13-14. Second, the State Defendants argue that 42 U.S.C. § 405(h) deprives this Court of subject matter jurisdiction because all claims that "arise under" the Medicare Act must be exhausted under the administrative process before judicial review is appropriate. *Id.* at 11-13. Third, the State Defendants argue that as to Plaintiff Nightingale Home Health Care, Inc., the Court should judicially estop it from bringing any claim because this lawsuit was not listed as an asset on its Bankruptcy Petition. *Id.* at 15-16. Fourth, the State Defendants contend that Plaintiffs have failed to provide sufficient factual basis to hold each of them individually liable. *Id.* at 16-18. Finally, the State Defendants challenge the sufficiency of the allegations as to Counts I, Equal Protection; IV, Procedural Due Process; and V, Unlawful Search and Seizure. *Id.* at 18-21.

The Court agrees with the Secretary and the State Defendants that the relief sought by Plaintiffs in this case must be subject to exhaustion under § 405(h). In the first instance, Plaintiffs cannot and do not deny that the relief they seek is to change the review procedure used for their facilities. It is clear that this review and oversight process is set forth in the Act and regulations promulgated by the Secretary under the Act and even provides for instances in which the Secretary may use a service other than CMS and a

state agency. *See* 42 U.S.C. §§ 1395x(m), 1395x(o), 1395bbb, 1395aa(a), 1395bb, 1395aa(c), & 1395cc(b); 42 C.F.R. §§ 488.6, 488.7, 488.8, 488.10, 488.11, 488.12, 488.20, 498.3, 498.40, 498.80 & 498.90.  In a case that challenges the procedures undertaken by the Secretary with respect to regulation of a Medicare provider, 42 U.S.C. § 1395ii channels all claims arising under the Act to an administrative process exclusively: "No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal or governmental agency except as herein provided;" and "[n]o action against [the Secretary] shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h).  That Plaintiffs have claimed that their Constitutional rights have been violated does not change the analysis because the Secretary has the authority to review such a challenge.  *Accord Ill. Council*, 529 U.S. at 13-14 (concluding that a certain nursing homes' challenge to provisions of the Medicare Act as unconstitutional are subject to the administrative procedure in § 405(h); *Salfi*, 422 U.S. at 761 (concluding that allegations of due process and equal protection violations in the Social Security context could not proceed under § 1331); *Ringer*, 466 U.S. at 614-15, 621-22 (concluding that § 405(h) applies where "both the standing and the substantive basis for the presentation" of the claim is the Medicare Act).  Moreover, the relief Plaintiffs seek in the Complaint is withdrawal of several surveys that formed the basis for termination of their status.  As such, their claims must first be addressed through the administrative process.

Even if the challenge is prospective as Plaintiffs argue, this Court will not be able to make a determination as to the merits unless it looks at the past and current decisions by the State Defendants under the auspices of the Medicare Act.  As a result, any

allegedly unrelated issues are inextricably intertwined with and un-severable from the Act. Plaintiffs seek to have the Court order the Secretary to proceed with her duties under the Medicare Act in a certain manner; therefore, any determination must arise under the Act; therefore, Plaintiffs must first exhaust their administrative remedies under § 405(h). *See Ringer* 466 U.S. at 615-16.

Plaintiffs' reliance on *Ex Parte Young* with respect to the Secretary is also misplaced. There is no evidence that Plaintiffs are left with no options. In fact, they are challenging the Secretary's decision in two forums. Under this circumstance, the Court will not apply the *Ex Parte Young* doctrine. *Accord Armstrong v. Exceptional Child Ctr., Inc.*, ___ U.S. ___, 135 S. Ct. 1378, 1387, 191 L. Ed. 2d 471 (2015).

Furthermore, with respect to the individual State Defendants, the barebones allegations of racial discrimination in the Complaint is insufficient under *Iqbal*, 556 U.S. at 678. For example, there are no factual allegations that other providers of any race have been treated differently by any of the Defendants; nor are there any facts from which the State Defendants can determine on which date negative survey results were racially motivated. Similarly, there is no factual support for the proposition that the number of survey's performed at Plaintiffs' facilities were excessive or in any other way discriminatory because no numbers are provided for Plaintiffs' facilities or any other similarly situated facility. In the same vein, there are no facts from which to conclude that the State Defendants impermissibly entered Plaintiffs' hospice facility to perform an inspection pursuant to state law. *See* Ind. Code §§ 16-25-3-6 (initial survey for licensure); 16-25-5-4 (complaint survey); 25-5-2.5 (minimum survey requirements); 16-25-5-5 (investigation of unlicensed hospice).

Moreover, with respect to Nightingale's assertion that the State Defendants have "ignored and violated required procedures for Medicare surveys" that deprived Plaintiffs of some liberty or property interest in their Medicare status in violation of the due process clause of the Fourteenth Amendment, Compl. ¶ 75, the Court agrees with the State Defendants that, to the extent such a liberty or property interest exists, the administrative review process provides Plaintiffs a remedy and they are not entitled to a pre-determination hearing.  *See Bryn Mawr Care, Inc. v. Sebelius*, 749 F.3d 592, 603 (7th Cir. 2014); *Northlake Cmty. Hosp. v. United States*, 654 F.2d 1234, 1242 (7th Cir. 1981).

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendants', Kelly Hemmelgarn, Randall Snyder, Ingrid Miller, Sylvia Mathews Burwell, and Jerome Adams, Motions to Dismiss.  The Court has determined that it is without jurisdiction to hear Plaintiffs' claims; therefore, the dismissal is with prejudice and judgment will be entered accordingly.

IT IS SO ORDERED this 5th day of April, 2016.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution:

Arend J. Abel
COHEN & MALAD LLP
aabel@cohenandmalad.com

Irwin B. Levin
COHEN & MALAD LLP
ilevin@cohenandmalad.com

TaKeena Monette Thompson
COHEN & MALAD, LLP
tthompson@cohenandmalad.com

Jennifer Elizabeth Lemmon
INDIANA ATTORNEY GENERAL
jennifer.lemmon@atg.in.gov

Maricel E.V. Skiles
INDIANA ATTORNEY GENERAL
maricel.skiles@atg.in.gov

Betsy M. Isenberg
OFFICE OF THE ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE
jill.julian@usdoj.gov

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE
shelese.woods@usdoj.gov